IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. KEVIN TUCKER, | ) ) ) |
| Petitioner, | ) ) |
| v. | ) No. 06 C 1639 ) ) Judge Joan H. Lefkow |
| DONALD GAETZ,[1] Warden, Menard Correctional Center, | ) ) ) ) |
| Respondent. | ) |

**OPINION AND ORDER**

Kevin Tucker ("Tucker"), who is currently incarcerated at Menard Correctional Center, has filed a *pro se* petition for writ of habeas corpus based on alleged violations of his rights under the Fourth, Sixth, and Fourteenth Amendments. Tucker asserts four grounds for relief: (1) trial court error in denying Tucker's motion to suppress evidence obtained during an allegedly illegal search, (2) trial court error in denying Tucker's motion to suppress his post-arrest statement, (3) prosecutorial misconduct, and (4) ineffective assistance of counsel. In his answer, Donald Gaetz ("respondent") requests that the court deny Tucker's petition. For the reasons stated below, the petition for writ of habeas corpus is denied.

---

[1] The original respondent in this case was Don Hulick. As Donald Gaetz has replaced Hulick as the warden of Menard Correctional Center, however, Gaetz has been substituted as the proper party respondent. *See* Rule 2(a) of the Rules Governing § 2254 Cases in the United States District Court; Fed. R. Civ. P. 25(d).

1

**BACKGROUND**

The following summary of facts is derived from the state court opinions, particularly the Illinois Appellate Court's opinion regarding Tucker's petition for post-conviction relief. *See People* v. *Tucker*, No. 1-03-0587, at 2–6 (Ill. App. Ct. May 17, 2005) (unpublished order) (hereinafter "Ill. App. Ct. Op.").

Tucker was a member of the Mafia Insane Vice Lords, a gang which in 1997 was at war with another gang, the Cicero Undertakers. On June 22, 1997, Tucker and four fellow gang members decided to retaliate for previous shootings by the Cicero Undertakers. Tucker retrieved an assault rifle from his house and rode in a van with the others, two of whom were also armed with guns, toward the intersection of Cicero Avenue and Adams Street. After someone in the van spotted Derrick Wandrick, a Cicero Undertakers member, shots were fired in his direction. Tucker did not fire a gun and ducked under the seat when the shooting began. Salada Smith and Joshua Thomas died, and Wandrick and Robert Carr were injured. The next day, one of Tucker's companions told Tucker he had hidden the assault rifle in Tucker's backyard. Tucker subsequently hid the rifle on his back porch and told another participant in the shooting to burn the van so it could not be used as evidence.

Chicago police officer Andrew Dakuras visited Tucker's home two days after the shooting. Tucker's mother informed Officer Dakuras that Tucker was not home but allowed him to enter the apartment and check for him. While in the apartment, Dakuras found the rifle protruding from a bag on the back porch. The bag also contained three ammunition boxes. Forensic evidence at trial demonstrated that some of the bullets recovered from under the victims' bodies were fired from the rifle found on Tucker's porch and that a fingerprint on one of

the ammunition boxes matched Tucker's. A warrant was issued for Tucker's arrest and he was taken into custody on August 15, 1998. After his arrest, Tucker admitted to his role in the shooting and signed a written confession detailing the events of June 22, 1997. Prior to trial, Tucker challenged the search of his home and his post-arrest statement. After evidentiary hearings, the trial court denied both motions and the evidence was presented at trial.

Tucker testified in his own defense at trial. He acknowledged being affiliated with the gang but, contrary to his post-arrest statement, claimed he was not in the van with his fellow gang members the night of the shooting. Tucker testified that a fellow gang member told him a gun had been placed in his backyard and that he was to "put it up." He also stated that he had told Chicago police officer Dominick Rizzi and Assistant State's Attorney Robert Robertson, who questioned him after his arrest, that he was being framed for the shooting. He further testified that both Rizzi and Robertson told him that if he signed a written confession and admitted to being in the van, he would not be charged with murder.

Based on a theory of accountability, the jury found Tucker guilty of two counts of first degree murder and two counts of aggravated battery with a firearm. Tucker was sentenced to natural life imprisonment for each conviction of first degree murder and 30 years' imprisonment for each conviction of aggravated battery with a firearm to be served concurrently with each other but consecutive to the natural life terms.

On direct appeal, Tucker's counsel determined there were no nonfrivolous issues for appeal and filed a motion to withdraw and an accompanying brief in accordance with *Anders* v. *California*, 386 U.S. 718, 87 S. Ct. 1336, 18 L. Ed. 2d 475 (1967). Tucker was given the opportunity to respond, and he identified several grounds for appeal: (1) the indictment was

insufficient because it did not charge him with murder based on a theory of accountability, (2) the state's closing argument regarding accountability was not supported by the evidence and prejudiced Tucker because it was intended to arouse the passions and prejudice of the jury, (3) jury instructions based on accountability were improper because accountability was not mentioned in the indictment and the evidence did not support such an instruction, (4) trial counsel was ineffective in failing to challenge the accountability instruction, and (5) the trial court abused its discretion in imposing a life sentence as the state law requiring a sentence of natural life for more than one first-degree murder conviction did not apply to those found guilty by accountability. In addition, Tucker summarily alleged that the trial court erred by denying Tucker's motion to suppress his post-arrest statements, for a directed finding, for judgment notwithstanding the verdict, and for a new trial. The Illinois Appellate Court rejected Tucker's principal arguments and stated that the listing of trial court errors, without supporting argument, provided no basis for appellate relief. *People* v. *Tucker*, No. 1-01-0367, at 3–8 (Ill. App. Ct. Dec. 31, 2001) (unpublished order). Consequently, the Illinois Appellate Court granted counsel's motion to withdraw and affirmed the trial court's judgment. *Id.* at 8–9.

Tucker then filed a petition for leave to appeal in the Illinois Supreme Court, contending that (1) the indictment was insufficient as it failed to charge him based on a theory of accountability, (2) the state's closing argument regarding accountability was improper, (3) the evidence did not support a jury instruction on accountability, (4) the Illinois statute requiring a sentence of mandatory life imprisonment for defendants convicted of multiple murders was unconstitutional, and (5) trial and appellate counsel were ineffective because they failed to challenge the sufficiency of the indictment. The Illinois Supreme Court denied Tucker's petition

4

for leave to appeal on May 30, 2002. Tucker did not seek a writ of certiorari from the United States Supreme Court.

On November 21, 2002, Tucker filed a post-conviction petition with the state trial court, alleging that (1) he received ineffective assistance of counsel because his trial counsel did not call him or any other witnesses at the evidentiary hearing on his motion to suppress his post-arrest statement; (2) the trial court abused its discretion by denying a jury instruction that would have allowed the jury to find Tucker guilty of second-degree murder; (3) the imposition of a life sentence on the facts of his case violated both the Illinois and federal constitutions; (4) his sentence violated *Apprendi* v. *New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435, because the indictment did not inform him that he faced a mandatory life sentence if he was found guilty; (5) the trial court erred in not instructing the jury that the state must prove beyond a reasonable doubt that Tucker was legally responsible for the murders; (6) the trial court erred by not adequately informing the jury throughout the trial that Tucker retained the presumption of innocence; and (7) the trial court erred in denying Tucker's motion for a mistrial based on remarks made by the prosecutor in closing arguments. On December 17, 2002, the trial court summarily dismissed Tucker's post-conviction petition as frivolous and patently without merit.

Tucker appealed the trial court's dismissal, arguing that (1) his mandatory life sentence violated the Illinois Constitution, (2) the state made improper remarks in opening statements and closing arguments and improperly elicited testimony regarding the Mafia Insane Vice Lords, and (3) he received ineffective assistance of appellate counsel because counsel did not raise the unconstitutionality of the mandatory life sentence he received and prosecutorial misconduct on direct appeal. On May 17, 2005, the Illinois Appellate Court affirmed the trial court's dismissal

of Tucker's post-conviction petition, finding his claims to be without merit. The appellate court also noted that Tucker's claim of prosecutorial misconduct based on the state's opening statement was not raised in his post-conviction petition and therefore could not be considered on appeal. Ill. App. Ct. Op. at 19.

Tucker filed a post-conviction petition for leave to appeal in the Illinois Supreme Court, asserting that the appellate court should have considered his prosecutorial misconduct claims with respect not only to closing arguments, but also to opening statements and the presentation of evidence, and that the appellate court should have considered Tucker's ineffective assistance of counsel claim regarding counsel's failure to allege these instances of misconduct on direct appeal. On September 29, 2005, the Illinois Supreme Court denied Tucker's petition for leave to appeal.

Tucker now seeks relief from this court under 28 U.S.C. § 2254 on the following four grounds: (1) trial court error in denying his motion to suppress evidence obtained during an allegedly illegal search of his home, (2) trial court error in denying his motion to suppress his post-arrest statement, (3) prosecutorial misconduct based on improper remarks made during opening statements and closing arguments and improper testimony, and (4) ineffective assistance of trial and appellate counsel.

## LEGAL STANDARD

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a court must deny a petition for a writ of habeas corpus with respect to any claim adjudicated on the merits by the state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the

United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d); *Fry* v. *Pliler*, 551 U.S. 112, 127 S. Ct 2321, 2326, 168 L. Ed. 2d 16 (2007).

A state court's decision is "contrary to" clearly established Supreme Court precedent if the state court "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [it]." *Williams* v. *Taylor*, 529 U.S. 362, 405, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). A state court unreasonably applies Supreme Court precedent "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of a particular state prisoner's case" or "if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407; *see also Bynum* v. *Lemmon*, 560 F.3d 678, 683 (7th Cir. 2009). For a state court decision to be considered unreasonable under this standard, it must lie "well outside the boundaries of permissible differences of opinion." *Hardaway* v. *Young*, 302 F.3d 757, 762 (7th Cir. 2002).

Before reviewing the state court decisions, however, the court must determine whether the petitioner fairly presented his federal claims to the state courts, as any claim not presented to the state's highest court is deemed procedurally defaulted. *O'Sullivan* v. *Boerckel*, 526 U.S. 838, 848, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999). "The petitioner must establish that he fully and fairly presented his claims to the state appellate courts, thus giving the state courts a meaningful opportunity to consider the substance of the claims that he later presents in his federal

7

challenge." *Bintz* v. *Bertrand*, 403 F.3d 859, 863 (7th Cir. 2005). To qualify as fair presentment, the claim must be asserted on one complete round of state court review, either on direct appeal or in post-conviction proceedings. *Lewis* v. *Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). A habeas claim may also be defaulted if the state court rests its judgment on an adequate and independent finding of procedural default under state law. *Coleman* v. *Thompson*, 501 U.S. 722, 729–730, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991); *Sturgeon* v. *Chandler*, 552 F.3d 604, 611 (7th Cir. 2009). Under Illinois law, waiver is an independent and adequate state ground. *See Sturgeon*, 552 F.3d at 611; *Whitehead* v. *Cowan,* 263 F.3d 708, 726–727 (7th Cir. 2001). A federal court may not grant habeas relief on a procedurally defaulted claim "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750; *Guest* v. *McCann*, 474 F.3d 926, 930 (7th Cir. 2007).

## DISCUSSION

### I. Procedurally Defaulted Claims

#### A. The Trial Court's Denial of Tucker's Motion to Suppress Evidence Obtained During the Search of Tucker's Home

Respondent argues that Tucker's claim that the trial court erred in admitting evidence obtained during an unlawful search is procedurally defaulted as Tucker did not challenge the consent to the search or his related ineffective assistance of counsel claims on direct appeal, in his petition for leave to appeal on direct review, or in any of his post-conviction pleadings. Tucker acknowledges that he has not raised this issue on appeal and that the claim may be

8

viewed as waived. Tucker's brief, however, may be read to contend that ineffective assistance of counsel amounts to cause for his failure to raise this claim on direct appeal.

Ineffective assistance of counsel can establish cause to set aside procedural default. *Wrinkles* v. *Buss*, 537 F.3d 804, 812 (7th Cir. 2008). Ineffective assistance of counsel claims asserted as cause for procedural default of another claim, however, must have themselves been submitted to the state courts or else they are similarly procedurally defaulted. *Edwards* v. *Carpenter*, 529 U.S. 446, 453, 120 S. Ct. 1587, 146 L. Ed. 2d 518 (2000). "The specific ground for ineffectiveness raised in the federal petition must have been raised in the state case." *Everett* v. *Barnett*, 162 F.3d 498, 502 (7th Cir. 1998); *see also Stevens* v. *McBride*, 489 F.3d 883, 893–94 (7th Cir. 2007) (failure to alert state courts to a specific ground for counsel's ineffectiveness precludes presentation of that ground in federal habeas petition). While Tucker advanced an ineffective assistance of counsel claim at various stages of appeal and post-conviction review, the specific grounds raised here were not presented to the state court. Thus, his ineffective assistance claim with respect to the search of his home is procedurally defaulted. Tucker would need to show cause for and actual prejudice arising from his failure to present these specific grounds for ineffective assistance to the state court in order for ineffective assistance to serve as cause for his procedural default of the unlawful search claim. *See Stevens*, 489 F.3d at 893–94; *Everett*, 162 F.3d at 502. Tucker has made no such showing, and, therefore, his claim regarding the trial court's error in not suppressing evidence found during the search of his home is procedurally defaulted.

    **B.**    **The Trial Court's Error in Denying Tucker's Motion to Suppress His Post-Arrest Statement**

Respondent also contends that Tucker's claim that the trial court erred in denying his motion to suppress his post-arrest statement is procedurally defaulted. Tucker did summarily assert that the trial court committed error in denying his motion to suppress his post-arrest statement on direct appeal. Because these assertions were presented without supporting argument, however, the appellate court did not specifically address them. Tucker did not further pursue this claim in his petition for leave to appeal or his post-conviction pleadings.[2]

Tucker cannot establish that this ground for relief was fully and fairly presented to the state courts as required to avoid procedural default. *See Bintz*, 403 F.3d at 863. While he did assert that denial of his motion to suppress was error on direct appeal, he did not present "the operative facts and legal principles that control" the claim and so procedurally defaulted it. *See id.* Tucker has not presented any evidence that would demonstrate cause and prejudice or a miscarriage of justice and so cannot overcome the procedural default. *See Coleman,* 501 U.S. at 750.[3] Thus, this ground for relief is procedurally defaulted.

### C.    Ineffective Assistance of Counsel

---

[2] Tucker did claim in his initial post-conviction pleading that he was tricked into making the post-arrest statement as support for a claim of ineffective assistance of counsel, but did not otherwise raise the issue.

[3] While Tucker argues in his reply brief that his post-conviction appellate counsel was ineffective for failing to raise the issues from his post-conviction petition on appeal, the court need not consider this argument as it has been waived. *See James* v. *Sheahan*, 137 F.3d 1003, 1008 (7th Cir. 1998) ("Arguments raised for the first time in a reply brief are waived."). Even if the court were to consider this claim of cause, as Tucker concedes, there is no constitutional right to effective assistance of post-conviction counsel and so "any attorney error that led to the default of [Tucker's] claims in state court cannot constitute cause." *Coleman*, 501 U.S. at 756–57; *see also Pennsylvania* v. *Finley*, 481 U.S. 551, 556–57, 107 S. Ct. 1990, 95 L. Ed. 2d 539 (1987). Further, as the alleged error in admitting Tucker's post-arrest statement was not raised in Tucker's post-conviction pleading, had his post-conviction appellate counsel raised the argument, the Illinois Appellate Court would have found it defaulted.

Respondent also contends that Tucker's claim of ineffective assistance of trial and appellate counsel is procedurally defaulted. With regard to trial, Tucker argues his counsel was ineffective because he (1) did not call Hattie Tucker, Tucker's mother, as a defense witness at trial to testify about her objections to the search of her home; (2) did not call Tucker as a witness in the pre-trial hearing on his motion to suppress his post-arrest statement; (3) did not object to the denial of the motion to suppress Tucker's post-arrest statement on the ground that Assistant State's Attorney Robertson, who was present when the statement was made, did not testify at the pre-trial hearing; and (4) failed to secure a jury instruction on the voluntariness of the post-arrest statement and to include the lack of such an instruction in Tucker's motion for a new trial. Tucker claims his appellate counsel was ineffective because, instead of raising these identified issues on direct appeal, counsel instead filed an *Anders* brief stating that there were no non-frivolous issues for appeal.

Although Tucker raised ineffective assistance of counsel claims on both direct and post-conviction review, the grounds for ineffective assistance he now asserts have not been fully presented to the state courts. Only the claim that trial counsel was ineffective for failing to call Tucker to testify at the suppression hearing was raised in state court, in Tucker's post-conviction petition. This claim, however, was not raised in his post-conviction appeal and so did not go through a full round of state court review. Thus, Tucker did not fully and fairly present the grounds for his ineffective assistance claim to the state courts as required to prevent procedural default. *See Stevens*, 489 F.3d at 893–894; *Lewis*, 390 F.3d at 1025; *Everett*, 162 F.3d at 502.

Tucker also has not demonstrated cause for his failure to do so,[4] and so his ineffective assistance of counsel claim is procedurally defaulted.

## II. Prosecutorial Misconduct

Tucker claims that he was denied a fair trial because the prosecutor made improper remarks during opening statements and closing arguments designed to inflame the jury's passions, improperly vouched for the state's witnesses, and injected personal beliefs into closing argument. Tucker also argues that he was prejudiced because the prosecution required him to demonstrate the Mafia Insane Vice Lords gang sign and uniformed police officers who testified for the state sat only fifteen feet from the jury during closing arguments.

Tucker focuses on several statements made during opening statements and closing arguments to support his claim of prosecutorial misconduct. During opening statements, the prosecutor called Tucker "a predator" and an "assassin" and said he went out with four others "looking for their prey." The prosecutor described the shooting as a "massacre" and a "blood bath." In closing arguments, the prosecutor again referred to Tucker and the others involved in the shooting as a "gang of assassins" who "used the cover of darkness to sneak up on their prey preying on unexpecting and unarmed people" and argued that Tucker, as part of this gang, should join his friends in jail, stating "[l]et's put the brave crew back together again where they belong." The prosecutor also stated that "we pay our law enforcement to solve crimes. Beat officers working the street, tac officers, detectives, evidence technicians, forensic investigators, State Police Crime Lab experts and State's Attorneys and when it comes to violent crimes don't

---

[4] The fact that Tucker raised other grounds for ineffective assistance of counsel on direct appeal and post-conviction review supports the court's finding that no cause exists for his failure to raise the grounds at issue here in state court.

12

we all want the best?" After an objection from defense counsel was overruled, the prosecutor concluded, "In this case, the citizens of Cook County got the best. . . . Law enforcement has done their job in this case. Now it's time for you to do yours. Assess the responsibility that Kevin Tucker earned on June 22, 1997. Find him guilty."

While Tucker raised his claim of prosecutorial misconduct in state court, he did not allege that the comments made during opening statements or the state's conduct of the trial were improper. Thus, the Illinois Appellate Court determined that Tucker had waived such claims. Ill. App. Ct. Op. at 19. This determination of waiver operates as an independent and adequate state ground precluding federal habeas review of the state's opening statement and presentation of evidence. *See Sturgeon*, 552 F.3d at 611. As such, this court will only consider whether the Illinois Appellate Court's decision regarding the state's closing argument was contrary to or an unreasonable application of federal law.

In *Darden* v. *Wainwright*, the United States Supreme Court established the framework for evaluating "whether the prosecutors' comments 'so infected a trial with unfairness as to make the resulting conviction a denial of due process.'" 477 U.S. 168, 181, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986) (quoting *Donnelly* v. *DeChristoforo*, 416 U.S. 637, 643, 94 S. Ct. 1868, 40 L. Ed. 2d. 431 (1974)). A reviewing court must first determine whether the challenged comments were improper and, if so, then consider whether the improper comments prejudiced the defendant. *United States* v. *Corley*, 519 F.3d 716, 727 (7th Cir. 2008).

The Illinois Appellate Court, while not citing *Darden*, applied relevant principles of federal law in evaluating Tucker's prosecutorial misconduct claim, finding the challenged

statements proper when considered in context.[5] Ill. App. Ct. Op. at 14–19. Specifically, the court found that, although the prosecutor did say that Tucker and others "used the cover of darkness to sneak up on their prey," the prosecutor did not "directly refer to [Tucker] as an animal," which would have been improper. *Id.* at 15. Further, this statement was found to "merely describ[e] the events of the night of June 22, 1997, based on the evidence adduced from defendant's written statement and Carr's testimony." *Id.* at 16. The prosecutor's characterization of Tucker and the others involved in the shooting as a "gang of assassins" was also found to be a reasonable inference from the evidence presented as Tucker admitted in his post-arrest statement that "he was among a group of people who participated in the shootings and murders of Smith and Thomas." *Id.* The appellate court concluded that the prosecutor's use of the terms "let's" and "we" in his argument did not rise to a level of impropriety as "the words did not create any inference that the State played a neutral role in the proceedings or that the State was a finder of fact." *Id.* at 17. Although recognizing that a prosecutor cannot personally vouch for the evidence, the appellate court found that the prosecutor was not doing so when he stated that "[i]n this case, the citizens of Cook County got the best." *Id.* at 18–19. Rather, the court interpreted the statement as a proper response to Tucker's accusations that he was framed, encouraging the jury to focus on the evidence adduced at trial. *Id.* at 19.

---

[5] The Illinois Appellate Court was guided by the Illinois Supreme Court's decision in *People* v. *Hudson*, which tracks *Darden* in its evaluation of a prosecutor's remarks. 626 N.E.2d 161, 178, 157 Ill. 2d 401, 193 Ill. Dec. 128 (Ill. 1993) ("[A] prosecutor must refrain from making improper, prejudicial comments and arguments. Even if a prosecutor's closing remarks are improper, they do not constitute reversible error unless they result in substantial prejudice to the defendant such that absent those remarks the verdict would have been different.").

The Illinois Appellate Court did not unreasonably apply federal law. Tucker has not shown that the state misstated the evidence against him. Although the prosecutor used invective terms in characterizing Tucker's actions the night of the shooting, "so long as the evidence supports the comments, prosecutors may speak harshly about the actions and conduct of the accused." *United States* v. *Durham*, 211 F.3d 437, 440 (7th Cir. 2000). While "a prosecutor may not vouch for the credibility of a witness by either expressing a personal belief in the truthfulness of a witness or implying that facts not before the jury lend credibility to a witness," a prosecutor is allowed to draw reasonable inferences from the evidence presented in closing arguments. *United States* v. *Collins*, 223 F.3d 502, 510–11 (7th Cir. 2000). Here, the Illinois Appellate Court, after considering the allegedly improper statements in the context of the evidence as a whole, reasonably applied the standards identified by federal law to find that the state did not engage in prosecutorial misconduct and that the prosecution's closing argument did not deprive Tucker of a fair trial. As such, the court will not disturb the Illinois Appellate Court's finding.

## **CONCLUSION AND ORDER**

For the foregoing reasons, Tucker's petition for a writ of habeas corpus pursuant to 22 U.S.C. § 2254 is denied.

Dated: Nov. 13, 2009         Enter: _____

                                          JOAN HUMPHREY LEFKOW
                                          United States District Judge